Samuel Louis ALLEN, who sues by his father and next friend, William E. Allen, Appellant,

v.

VOGUE AMUSEMENT COMPANY et al., Appellees.

Court of Appeals of Kentucky.

Feb. 14, 1964.

Rehearing Denied May 8, 1964.

Fred J. Karem, Karem & Karem, Louisville, for appellant.

Louis N. Garlove, Morris & Garlove, Louisville, for appellees.

CULLEN, Commissioner.

Samuel Louis Allen, a 12-year-old boy, brought action by his father and next friend against the Vogue Amusement Company, two of its employes, and a merchant policeman, seeking damages for false imprisonment growing out of an occasion on which Samuel was detained at a movie theater of the Vogue Amusement Company by its employes with participation by the policeman, and damages for wrongful ejectment growing out of another occasion when Samuel was ejected from the theater. The jury returned a verdict for the defendants and judgment was entered accordingly. The plaintiff has appealed from the judgment, claiming that he was entitled to a directed verdict on the false imprisonment claim and that prejudicial errors were committed on the trial in the admission of evidence.

■ The defendants' evidence warranted a finding that Samuel caused a disturbance in the theater; he was asked to leave and was escorted to the outside of the theater by an usher; he attempted to force his way back into the theater; the usher then took him into the manager's office where a call was made to the boy's mother; she asked that the boy be held until she could come for him; when she came for him he was permitted to leave with her. Under such a finding the initial restraint of the boy could be considered justifiable as a proper measure to protect the defendants' property from invasion and interference by the boy. See 22 Am.Jur., False Imprisonment, sec. 78, pp. 407, 408; 35 C.J.S. False Imprisonment § 14, p. 640. And his subsequent detention was at the request of his parent. Accordingly, it is our opinion that the plaintiff was not entitled to a directed verdict.

Damages were claimed on the theory that the boy had become nervous and upset, and rejective of adult authority, as a result of his detention at the theater. In cross-examination, after several questions relating to his nervous and upset condition, he was asked:

"Now, how about on Lexington Road, when you were arrested by some police officers with some older boys, did that make you nervous and upset?"

An objection was sustained to the question and the court not only directed the jury "to disregard that statement altogether" but strongly admonished the attorney for asking the question.

Later, after considerable discussion in chambers, counsel for defendants was permitted to ask the boy's father and mother (who previously had testified that he was nervous and upset and would not accept adult authority), whether the boy had been detained overnight on an occasion after the theater incident. Each replied that there was an occasion on which a group of boys with whom Samuel was riding had been stopped and taken into custody by the police, and Samuel had been taken to the Children's Center and kept there overnight. The witnesses then were asked whether that experience upset the boy or affected his nervous condition. The father's reply was that the boy felt ashamed and had a feeling of guilt, while the mother said that the experience did not emotionally upset or disturb him.

It is contended that the question concerning the arrest on Lexington Road was improper and so prejudicial that the admonition did not cure it. Also, that this question, and the subsequent questions asked the parents, were designed solely to prejudice the jury by showing bad character of the boy through specific instances of misconduct.

The basis on which the trial court permitted the subsequent questions asked the parents was that another instance of detention could be inquired about as bearing on the alleged emotional effects claimed to have been suffered by the boy from the theater detention. The trial judge, in conference in chambers, carefully limited the form of questions that could be asked so that the questions would not mention "arrest" or "police officers" and would only ask whether there had been another instance of a detention. It appears that the judge had sustained the objection to the question asked the boy concerning his arrest on Lexington Road because it gave emphasis to the law-violating aspects of the incident rather than being confined to the detention aspects.

■ In our opinion the questions asked the parents, carefully limited in accordance with the trial judge's directions, were proper as bearing on the issue of damages. See Butcher v. Adams, 310 Ky. 205, 220 S.W.2d 398. It is true that the court did not admonish the jury as to the limited purpose of the questions, but no request for an admonition was made.

■ While perhaps the question asked the boy was objectionable because of its mention of arrest and police officers, we think the strong admonition given by the court was sufficient to prevent prejudice. Furthermore, in the answers to the subsequent questions asked the parents, it was brought out that the boy was not arrested on the occasion in question but merely held in custody overnight by reason of his having been in the company of his older companions who were arrested.

The judgment is affirmed.