Robert THOMAS, Appellant,

v.

SURF POOLS, INC., Appellee.

SURF POOLS, INC., Cross-Appellant,

v.

Robert THOMAS, Cross-Appellee.

Court of Appeals of Kentucky.

March 21, 1980.

Discretionary Review Denied
Aug. 26, 1980.

**438**

Karl S. Forester, Forester & Forester, Harlan, Joe C. Savage, Turley, Savage & Moore, Lexington, for appellant and cross-appellee.

William A. Watson, Middlesboro, for appellee and cross-appellant.

Before HOWERTON, REYNOLDS and WHITE, JJ.

HOWERTON, Judge.

Thomas, the plaintiff below, appeals from a jury verdict which awarded him nothing on his complaint against Surf Pools, Inc. He also appeals from an order overruling his motion for a judgment n.o.v. and/or a new trial. Surf Pools, Inc. has cross-appealed alleging that the trial court erred by refusing to grant its motions for a summary judgment and a directed verdict.

Thomas sustained a cervical vertebrae fracture while using a swimming pool designed and constructed by Surf Pools, Inc. The pool was owned and operated by the City of Evarts, Kentucky. Thomas became a partial quadriplegic as a result of his injury. He filed his action against Surf Pools, Inc. and the City of Evarts. He made a settlement with the City for $50,-000.00.

The case against Surf Pools was tried primarily on two conflicting theories. Thomas alleged negligence in the design and construction of the pool which permitted him to slip at the edge of the pool and fall headfirst in an area containing four feet of water. The defense was based on contributory negligence.

Thomas presents four allegations of error.

(1) The court erred in overruling his motion for a directed verdict on liability against Surf Pools, Inc.

(2) The trial court erred in refusing to instruct that Surf Pools, Inc. had a duty to employ a licensed engineer or architect to supervise construction of the pool.

(3) The trial court erred in overruling his objection to a jury view of the scene.

(4) The court erred in overruling his motion for a new trial on the ground of newly discovered evidence.

Thomas first argues that he was entitled to a directed verdict on the question of Surf Pools' negligence. He contends that Surf Pools failed in its duty to warn of the possible danger of a painted edge around the pool. The surface from which Thomas entered the pool was painted and was therefore slippery when wet. The president of Surf Pools testified that he had seen the painted area and considered it dangerous. Thomas argues that this testimony constitutes an admission of liability which is binding.

It was never determined who was responsible for painting the railing or border around the pool. The only thing the president admitted was that he had seen the paint when he had returned to the pool to deliver additional equipment and to instruct the city employees on the operation of the pool.

Thomas argues that *Bohnert Equipment Co., Inc. v. Kendall*, Ky., 569 S.W.2d 161 (1978), is controlling on this issue. In that case, a seller of a crane discovered that it was not operating properly and that it was dangerous. The crane finally fell and injured an employee, and the question was whether or not the seller had given a warning. Surf Pools distinguishes *Bohnert* and argues that it involved a situation where the builder and seller of a crane had superior knowledge of its design and its load-bearing capabilities. The problem was one arising directly from the design and installation of the device, whereas in this case the alleged defect was superimposed on the finished product by unknown persons.

Furthermore, Surf Pools contends that it had no continuing duty to maintain the pool. It was never asked to make any critical inspection of the pool after it was finished and placed into operation by the City. It had nothing to do with the painting. We determine that *Bohnert, supra*, is distinguishable, but even if we considered it in a manner most favorable to Thomas, there would still be the problem of causation which would prevent the directed verdict. In other words, was the painting a substantial factor in causing Thomas' fall?

Thomas was the only person to testify that the painted area was slick and that it contributed to his falling. Surf Pools argues that even if Thomas fell because the area was slick, he voluntarily accepted the risk by engaging in horseplay and other foolish activity. Thomas was very familiar with the pool. Surf Pools also points out that Thomas' expert witness placed little emphasis on the painted area as a large contributory factor. Even Thomas' counsel stated to the trial judge that the painting was part of the theory of the case but "only to an insignificant degree."

Thomas next argues that the trial court erred in refusing to instruct the jury that Surf Pools had a duty to employ a licensed engineer or architect to supervise the design and construction of the pool. This argument is based on KRS 322.020, 322.010, and 322.360, Kentucky Swimming Pool Regulations No. 4, and the contract between the City of Evarts and Surf Pools. Thomas reasons that both the design and construction of the pool fall within the definition of "engineering" in KRS 322.010, and that Surf Pools is a "person" within the meaning of KRS 322.020. He also contends that KRS 322.360 and Kentucky Swimming Pool Regulation No. 4 require the services of a licensed engineer or architect for both design and construction. A provision in the contract between Surf Pools and the City required the company to furnish "superintendence."

Surf Pools did not provide a licensed project engineer or architect during the construction of the pool. The trial court determined that if there was a requirement of an on-site engineer or architect during construction, it was the duty of the City to provide one. We agree with the trial judge. KRS 322.360(1) provides:

Neither the state nor any of its political subdivisions shall engage in the construction of any public work involving engineering, unless the plans, specifications and estimates have been prepared and the construction executed under the direct supervision of a licensed engineer or a licensed architect.

It appears that the statute is directed to the state, cities and counties rather than to a swimming pool builder. Surf Pools had no statutory duty to provide a resident engineer during construction. Final construction was approved by a state engineer. The City had an inspector on the site to oversee the construction, and it was never established that the inspector did not qualify as an engineer. Even though the requirement that the plans and specifications be prepared by an engineer is also a duty of the City, the evidence is that the design of the pool submitted by Surf Pools was reviewed and approved by the state engineers.

KRS 322.010 and 322.020 appear to be inapplicable to this situation. One provides a definition for engineering and the other prohibits any person from engaging in the practice of engineering without a license. The chapter is designed to control and regulate the licensing and practice of professional engineering and to prescribe certain times and conditions when the services of a licensed engineer are required. The legislature never intended that every contractor be, or employ, a licensed engineer or architect for every type of design and construction project. The legislation was intended to prevent individuals from holding themselves out as professional engineers without a license. Surf Pools, Inc. has produced evidence that various professionals have been associated with it in performing the work for the pool at Evarts. It argues that none of these reputable professional firms would have participated with it had they considered the corporation to be engaging in the unlawful practice of engineering. Surf Pools, Inc. was a contractor and builder and not an engineer.

The company also argues that even if it failed to comply with the statutory requirements, such noncompliance does not impose liability, unless it is also shown that the breach was the proximate cause of the injury. *Pike v. George*, Ky., 434 S.W.2d 626 (1968). This would be a question of fact for the jury. This argument is correct, but on the basis of our previous determinations, it was not error for the trial court to refuse to instruct on the alleged statutory duty.

Thomas' third argument is that the court erred in permitting the jury to view the swimming pool. He objected on the basis that changes had been made around the pool which might prejudice his case. The trial court reasoned that the subsequent repairs, improvements, or changes in safety markings were done by the City, and that since the City was no longer in the case, the objection was improper. To this, Thomas argues that under *Orr v. Coleman*, Ky., 455 S.W.2d 59 (1970), the jury would be asked to consider the liability of the City and perhaps apportion any award he obtained.

While Thomas' argument is correct, and it is clearly possible that substantial prejudice might result in some cases where a jury could conclude that due to subsequent repairs the City rather than Surf Pools was at fault, we conclude from reviewing all the circumstances in this case that substantial prejudice did not exist. The only safety modification of which the jury was aware was the stenciling of the words "no diving" on the deck at the shallow end of the pool. The site view by the jury should have been helpful in determining how the accident occurred or might have occurred, and the probable benefits to the jury would substantially outweigh any potential prejudice to Thomas in this case.

We see little significance in the other changes which had occurred. One difference was that the border around the pool was orange when Thomas was injured and it was blue at the time the jury saw the pool. There was also a new sign intended to prohibit such things as running and horseplay, but the lack of a sign was never argued to be a factor in causing the injury.

Thomas' final argument is that the trial court erred in overruling his motion for a new trial on the ground of newly-discovered evidence. After the trial, Thomas' attorney became aware of the existence of a transcription of a telephone interview between an adjuster for the insurance carrier of the City and a witness by the name of Miller. Thomas contends that several

statements by Miller were substantially different from the statements made by him at the trial. We find no merit in this argument.

Thomas' attorney was aware that Miller had been subpoenaed to testify, and he could have deposed him and learned whether he had made any prior statements regarding the case. Furthermore, when we consider the alleged differences, we can only reach the following conclusions. The telephone statement is not necessarily contradictory to the in-court testimony. Miller was under no duty to volunteer complete information during the telephone interview. Any failure in clarification was the fault of the interviewer. Miller may not be impeached for his failure to volunteer facts.

■ If Thomas had been armed with the prior limited statement, he might have been able to discredit the witness, at least to some extent. It is well settled, however, that a new trial will not be granted where it appears that new evidence can have no other effect than to discredit the testimony of a witness, contradict a witness's statements, or impeach a witness, unless the evidence is so important to the issue or the evidence is so strong and convincing that a different result would necessarily follow if a new trial was granted. 58 Am.Jur.2d, *New Trial*, § 173.

Surf Pools has also pointed out that the telephone interview was conducted in preparation for the litigation. If it had been requested prior to trial, it would have been privileged information. CR 26.02(1). Any revelation of the information prior to trial would have had to have been obtained from interviewing Miller. In any event, the information was not requested until after the trial. Courts do not favor new trials and will not grant them on the ground of newly-discovered evidence which is merely cumulative or for impeaching character. *Morris v. Thomas*, Ky., 240 S.W.2d 99 (1951). New evidence which would authorize a new trial must be of such unerring character as to preponderate greatly or have a decisive influence upon the evidence and lead to a different result. *Long v. Scheffer*, Ky., 316 S.W.2d 375 (1958).

In view of the decision in this case, we see no necessity for discussing the allegations of error presented by the appellee and cross-appellant.

The judgment of the trial court is affirmed.

All concur.