**Jesse DAUGHERTY, Appellant,**

v.

**KUHN'S BIG K STORE and Nathaniel Welch, Appellees.**

Court of Appeals of Kentucky.

Aug. 26, 1983.

Henry E. Hayden, Hayden & McKown, Hartford, for appellant.

S. Boyd Neely, Jr., James B. Brien, Jr., Neely & Brien, Mayfield, for appellees.

Before MILLER, PAXTON and WIL-HOIT, JJ.

MILLER, Judge.

This is an appeal from a judgment of the Graves Circuit Court entered upon a jury verdict in favor of the defendant in an action for false arrest and imprisonment.

On April 24, 1981, the appellant, Jesse Daugherty, and his wife went to the Kuhn's Big K Store (hereinafter referred to as "Big K") in Mayfield, Kentucky, one of the appellees herein. After they had made the purchase of some white rocks, the appellant noticed some men unloading tomato plants from a truck and displaying them on the sidewalk in front of the store. Appellant

asked the price of the plants of one of the men who, not knowing this information, volunteered to go inside the store to find out.

Some time passed and the employee did not return. Afraid he would be late for work, the appellant went inside the store and asked a cashier for the price of the tomato plants. The cashier, not knowing the price, asked another cashier who informed her that the tomatoes cost sixty-six cents each. Appellant then paid for six plants and went back outside to pick them out and load them in his van.

In the meantime, Paul Strickland, the assistant manager with whom appellant had originally spoken about the plants, was in the back of the store attempting to get the price information. He returned to the front of the store in time to see the appellant load the plants in his van and drive off. Strickland assumed the appellant was stealing the plants and took down his license plate number and informed the store manager of his suspicion. The two then made some inquiries of the cashiers as to whether any plants had been sold; but no such inquiry was made of the cashiers who dealt with the appellant until after the police were called.

In route to their home, the appellant and his wife were pulled over by several police cars. Even though the appellant presented his receipt for the plants, a police officer required the appellant to return to Big K where he and his wife were detained for approximately thirty minutes.

When the appellant arrived at work that afternoon, word had already spread about the incident. He testified that since that day he has been known as the "Tomato Man," and has frequently been called names and been booed in the lunch room at work. He has been teased about the incident at social functions and restaurants. The men he supervises have lost respect for him and, according to his testimony, he has become nervous and "awfully depressed" and "awfully ashamed."

On May 4, 1981, the appellant filed his complaint against Big K and Nathaniel Welch, the manager of the Mayfield store, in Graves Circuit Court seeking damages resulting from the alleged unlawful detention and for the humiliation and embarrassment and mental anguish he suffered, as well as damage to his reputation, in the sum of $750,000.00. The appellees answered the claim by asserting that they acted with probable cause. KRS 433.236.

During the trial which commenced on September 22, 1982, the court, after a hearing in chambers, allowed the appellees to question the appellant's wife about her husband's previous criminal record who testified that, to her knowledge, her husband had never had to appear in criminal court and never had pled guilty to any criminal charges. Thereafter, the court permitted the appellees to call the Graves District Court Deputy Clerk to the stand who testified that, approximately two years prior to the detention at Big K, the appellant had been charged under a warrant with a felony and had subsequently pled guilty to a misdemeanor, theft by deception under $100.00. This charge arose after a post-dated check issued by the appellant was presented for payment prior to the date thereof and was returned for insufficient funds.

The only issue herein is whether the trial court erred by allowing the appellees to introduce evidence of the appellant's prior guilty plea to a misdemeanor.

The appellant argues that it was improper for the trial court to allow the appellees to introduce evidence of his prior guilty plea to a misdemeanor for the following reasons: CR 43.07 does not allow a party to be impeached by evidence of a particular wrongful act, except evidence of a prior felony conviction. Specific acts of misconduct are inadmissible under the foregoing rule as proof of character and reputation of parties in civil litigation. Doubtless the basis of the foregoing rule is that the value of such evidence is slight when compared to its prejudicial nature and the possibility of the jury's misuse thereof. *See Baker Pool Company v. Bennett,* Ky., 411 S.W.2d 335 (1967), and *Caulder v. Commonwealth of Kentucky,* Ky., 339 S.W.2d 644 (1960).

The appellees argue that the fact the appellant pled guilty to the misdemeanor "affects the measure of each and every element of damage appellant sought." They contend the evidence is relevant and competent on the issue of damages, particularly those relating to emotional anguish. They also contend that the appellant cannot complain of the court's failure to admonish the jury concerning the proper use of the evidence of the misdemeanor charge because he did not request an admonition.

The appellee concedes that the appellant "may be correct" in his belief that it is improper to impeach a witness with evidence of a prior misdemeanor conviction and certainly CR 43.07 so provides. However, while the evidence of appellant's guilty plea directly contradicted the wife's testimony on that subject, the evidence was not admitted for the purpose of impeaching Mrs. Daugherty, although that was its effect. During the hearing in chambers regarding this issue, the trial court announced that it was going to allow the evidence to be introduced for the purpose of establishing mitigation of damages to appellant's reputation. Such is indicated by the following statement of the trial judge:

> This is a man claiming his reputation has been damaged and I think you can show anything you can show about the reputation to refute that.

■ It is well settled in Kentucky that where damages are sought for injuries to reputation, evidence of the plaintiff's bad reputation may be shown in mitigation of damages. *See Louisville & N.R. Co. v. Owens,* 164 Ky. 557, 175 S.W. 1039 (1915). *See also Eastland v. Caldwell,* 5 Ky. (2 Bibb) 21, at 24 (1810), which holds as follows:

> In the estimation of damages, the jury must take into consideration the *general* character of the plaintiff and his standing in society . . . .
> This appears to us to be the only correct and rational rule upon the subject; for while it affords the jury a fair opportunity of weighing the injury, it cannot take the plaintiff by surprise, as every man is presumed prepared to show his general character.

(A trite basis for the rationalization of the foregoing rule may be that if a man has no reputation then he is not likely to be injured in that area). It is, however, equally well-settled that such evidence of bad character may not include specific acts of the plaintiff's conduct. *Campbell v. Bannister,* 2 Ky.L.Rptr. 72, 79 Ky. 205 (1880). This rule has been consistently applied in this jurisdiction where damage to one's reputation is alleged as in *Register Newspaper Co. v. Stone,* 31 Ky.L.Rptr. 458, 102 S.W. 800 at 801 (1907), where the court held as follows:

> Hence, while it is a well-established rule that the reputation of one may be put in evidence in an action for libel for the purpose of mitigating the damages, this reputation is not established by singling out particular acts or facts, but is established by the testimony of those who are familiar with and know the people among whom the one whose reputation is assailed associates.

See also *Louisville Times Co. v. Emrich,* 252 Ky. 210, 66 S.W.2d 73 (1934).

■ Reputation is not that character attributed to a man by what a few persons say, nor is it the "true" character of one man. Reputation entails that reputed character held of a person by his community. Little probative value, therefore, can be given to evidence of specific acts of conduct when determining damage to one's reputed character. Moreover, if compelled to defend specific acts the focus of the trier of fact would be diverted from the issue of one's reputed character onto the resolution of the specific acts. While one can be expected to defend his general reputation, it would be manifestly unfair, to compel him to defend a lifetime of specific acts. 29 Am.Jur.2d *Evidence* § 344 (1967).

Thus, despite the trial court's belief that one can show anything about the plaintiff to refute alleged damage to his reputation, such is clearly not the law in Kentucky. For further support concerning this issue, *see* Lawson, *Kentucky Evidence Law Handbook,* § 2.05 and 2.15 (1976), and Elder,

*Kentucky Tort Law,* § 1.13(D)(3), pp. 244–249 (1983).

We find two Kentucky cases wherein evidence of specific acts of conduct have been allowed to be admitted for the purpose of showing mitigation of damages resulting from the intangible injuries of embarrassment, humiliation and mental anguish. In *Butcher v. Adams,* 310 Ky. 205, 220 S.W.2d 398 (1949), the appellant was falsely arrested and imprisoned for two hours for selling liquor on election day after the polls had closed. He alleged that he was humiliated and emotionally distressed by this incident and filed a suit against the sheriff for these injuries. During the trial, the appellee was allowed to question him about prior arrests and a 90-day sentence he served within the year for charges connected with the operation of his liquor business. The jury returned a verdict for the sheriff from which the appellant appealed, raising the issue of the competency of the evidence of his prior convictions. This Court's predecessor in affirming the judgment, held as follows:

> The Court admonished the jury, however, that it was only admissible "for the purpose of affecting the measure of damages," and for such purpose it was proper.

In *Allen v. Vogue Amusement Company,* Ky., 377 S.W.2d 805 (1964), the appellant, a 12-year-old boy, alleged he was wrongfully detained by the appellee, which caused him to be "nervous and upset and rejective of adult authority." Relying on the *Butcher* case, *supra,* the former Court of Appeals affirmed the judgment in favor of appellee, whom the Court had permitted to question the appellant's parents about emotional injuries suffered by their child as a result of another detention by police, not involving the appellees. The appeals court reasoned as follows:

> The basis on which the trial court permitted the subsequent questions asked the parents was that another instance of detention could be inquired about as bearing on the alleged emotional effects claimed to have been suffered by the boy from the theatre detention. The trial judge, in conference in chambers, careful-ly limited the form of questions that could be asked so that the questions would not mention "arrest" or "police officers" and would only ask whether there had been another instance of detention.... In our opinion the questions asked the parents, carefully limited in accordance with the trial judge's directions were proper as bearing on the issue of damages.

The appellees have not cited the *Allen* case, *supra.* They argue that *Butcher v. Adams* provides conclusive authority for the trial court's admission of the evidence of the appellant's prior guilty plea. However, both the *Butcher* and *Allen* cases contain narrowly carved exceptions to the general rule prohibiting the introduction of evidence of specific acts of conduct. In fact, the *Allen* decision indicates that such evidence should be cautiously used and makes two references to the fact that the trial court "carefully limited the form of the questions" to avoid as much as possible the effect of the evidence of the plaintiff's arrest while allowing the defendant to offer proof that there might be another cause for the plaintiff's emotional injuries.

Neither *Butcher v. Adams* nor *Allen v. Vogue Amusement Company, supra,* discuss the issue of the proper way to prove the character of a party, nor do they overrule the long line of cases in this jurisdiction which disallow the introduction of specific acts to prove character. Thus, they are authority for allowing introduction of such evidence only for the purpose of proving that the mental anguish complained of was actually caused, in whole or in part, by some other event than that caused by the defendant. These cases are not authority for admitting such evidence for the purpose of proving that the plaintiff's character is so poor that he would not be embarrassed or humiliated by being falsely accused and detained. This interpretation is further supported by the fact that in both the *Butcher* and *Allen* cases, the specific acts introduced were similar to and occurred close in time to the wrongful detentions complained of by the respective plaintiffs.

The appellees have not introduced any evidence of, nor have they attempted to explain, how the prior guilty plea "diminished" the shame and embarrassment appellant testified he experienced as a result of the incident at Big K. They did not introduce any evidence, nor did they even ask the appellant whether or not he was embarrassed by the criminal court incident or whether that experience lessened the emotional injuries he testified he suffered as a result of the appellees' conduct. It is certainly not a truism that one becomes less sensitive to embarrassment and humiliation with each successive incident tending to arouse such emotion. "Humiliation and embarrassment are, by their nature, not easily quantified...." *Kentucky Com'n on Human Rights v. Fraser*, Ky., 625 S.W.2d 852 at 855 (1981). Yet, without any evidence in support thereof, the appellees want this Court to assume that the appellant was embarrassed in district court two years prior to their alleged wrongdoing which, in turn, lessened the embarrassment and humiliation he suffered from their actions.

It is our opinion that, standing alone, the clerk's testimony of the appellant's prior guilty plea had no probative value on the issue of mitigation of damages. Under the well-settled case law of this state, it could not properly have been admitted for any other reason. Considering the nature of the evidence and its effect of impeaching Mrs. Daugherty, the error in admitting the evidence was clearly prejudicial.

For the foregoing reasons the decision of the trial court is reversed and this cause is remanded to the circuit court for a new trial consistent with this opinion.

PAXTON, J., concurs.

WILHOIT, J., concurs in result.