**Billie Marvin MASSEY, Appellant,**

v.

**Marshall McKINLEY, Appellee.**

Court of Appeals of Kentucky.

May 3, 1985.

Ordered Published May 17, 1985.

Bryan LeSieur, Brownsville, for appellant.

Gary S. Logsdon, Brownsville, for appellee.

Before COOPER, HOWARD and WILHOIT, JJ.

HOWARD, Judge.

This is an appeal from a judgment of $25,500.00 in favor of the appellee in an action for malicious prosecution.

Sometime between 9:30 P.M. December 28, 1980, and 8:00 A.M. on December 29, 1980, a gate, lock and fence around a portion of the appellant's farm were damaged. Repairs cost the appellant approximately $500.00. According to the appellant's testimony, he made several inquiries, obtained some evidence and swore out a complaint against the appellee with the aid of the Edmonson County Attorney.

The appellee was arrested on January 9, 1981, and spent one night in jail. The following morning his father posted bail. A trial was held on October 26, 1981, and the trial court directed a verdict of acquittal at the close of the prosecution's case.

On November 14, 1981, the appellee filed the present suit alleging malicious prosecution by the appellant in bringing the earlier action. The appellee demanded damages for injury to reputation and credit, physical discomfort and mental anguish for a total of $500,000.00. He also claimed attorney's fees of $500.00 and exemplary damages of $500,000.00.

A trial was held on March 28, 1984. The jury returned a verdict in favor of appellee, awarding him $12,500.00 compensatory damages, $12,500.00 in exemplary damages, and $500.00 for attorney's fees.

The appellant maintains that the evidence was insufficient to support a finding of malicious prosecution. In order to establish malicious prosecution, the plaintiff must show that the defendant instigated an action against the plaintiff with malice and without probable cause to believe the plaintiff committed the offense charged. *Raine v. Drasin*, Ky., 621 S.W.2d 895 (1981); *Cravens v. Long*, Ky., 257 S.W.2d 548 (1953). Further, malice may be inferred from a lack of probable cause. *Sweeney v. Howard*, Ky., 447 S.W.2d 865 (1969). Moreover, the plaintiff has the burden of making a clear showing that no probable cause for the prosecution

existed. *Puckett v. Clark,* Ky., 410 S.W.2d 154 (1966).

In reviewing the evidence presented at trial, we cannot say the jury was clearly erroneous. The appellant's criminal complaint of January 9, 1980, alleged criminal mischief in the second degree and stated that a Mr. and Mrs. Duncan had seen the appellee near the appellant's damaged property between 9:30 and 10:00 on the evening of December 28, 1980. Further, the complaint stated that Freddie Wilson and his son, Clark Lowaine, also saw the appellee in the same area about 5:30 or 6:00 A.M. December 29, 1980.

At the March 28, 1984 proceeding, the testimony of the above listed individuals differed from the statements in the complaint. Mr. and Mrs. Duncan both testified that on the night of the incident, they saw a gray and burgundy truck near where appellant's fence was damaged. Mr. Duncan testified that he had not seen the truck before and has not seen it since. Both testified that they did not see the driver or any other persons at that time.

Freddie Wilson testified that he saw a light blue or green truck near the appellant's damaged fence about 5:00 or 5:30 the morning of December 29, 1980. Clark Lowaine Wilson described the truck as light-colored. Both testified that they only saw the truck, not any persons. Freddie Wilson said he had not seen the truck before or since that time and that the appellee had a burgundy, two-tone truck but that the truck he saw was not that color. Clark Wilson said only that he knew appellee had a burgundy and silver truck but he could not tell the exact color of the truck he had seen that morning.

The appellant said that the color of the truck as related to him by Mr. Duncan made him suspicious of the appellee. He and Sheriff Gaines allegedly went to the appellee's home and confronted the appellee with the details of sighting of the truck. The appellee asked, before being told who informed them, if Mr. Duncan had seen him. Sheriff Gaines did not testify to corroborate the events, but an affidavit prepared by the appellant stating that the Sheriff would agree with his version of the events was read into evidence.

■ In general, a person's "mere presence when a crime is committed is not evidence that one committed it or aided in the commission." *Allen v. Commonwealth,* Ky., 199 S.W.2d 453, 454 (1947). However, in the instant case, the evidence does not even show the appellee was present, only that a truck that may or may not be the appellee's was seen the evening in question. Thus, we see no evidence to sustain a finding of probable cause of the appellee's guilt.

The appellant also challenges the admission of the testimony of a Mr. Hawks. Hawks testified that about a week before trial the appellant cursed him and the appellee and told Hawks that he was going to put them both in the penitentiary.

The appellant argues that any events subsequent to the initiation of a prosecution are irrelevant, prejudicial and cannot be considered in an action for malicious prosecution. The appellant did not cite any Kentucky authority. Although the evidence even without Hawks' testimony is sufficient to support a finding of malicious prosecution, we will briefly discuss the appellant's contention.

■ The question of the relevance of evidence is generally within the trial court's discretion. Further, that discretion is very wide in scope. The trial court admitted this evidence to show the appellant's state of mind in swearing out the criminal complaint. Clearly, the state of mind of the appellant in regard to malice was relevant to the civil proceeding. Malice can be inferred from the lack of probable cause, but Hawks' testimony was direct evidence that the appellant was "out to get" the appellee. Thus, the trial court properly admitted the evidence.

■ In the appellant's brief, and in his trial testimony, the inference is made, although not specifically argued, that the appellant only related what he was told by

the others to the Edmonson County Attorney and the County Attorney actually wrote out the complaint. The implication is that any statements in the complaint were made with the advice of counsel. Advice of counsel is a defense to malicious prosecution, but only if there is "a full and fair disclosure of all material facts to the attorney advising prosecution." *Reid v. True,* Ky., 302 S.W.2d 846, 847 (1957); *See Puckett, supra.* However, if there is a dispute about a material fact that is disclosed, then a jury issue is produced. The jury in the instant case decided that there was not the proper disclosure to the county attorney.

In the appellant's final argument in regard to the evidence, he contends that some newly discovered evidence entitled him to a new trial pursuant to CR 59.01(g). Witness Freddie Wilson submitted an affidavit along with the CR 59.01(g) motion to the trial court. In the affidavit, Wilson stated that about 3 weeks prior to the trial in October of 1981, he received a phone call from the appellee, who identified himself. The appellee asked Wilson how he planned to testify at trial. Wilson said he planned to tell the truth. The next evening or so, the appellee called again and asked similar questions and Wilson gave the same answer.

The next night, and for about 10 nights thereafter, Wilson received late night phone calls where the caller only breathed into the telephone. On the last night of such calls, when the phone rang around 11:00 P.M., Wilson drove his car to the appellee's house. The appellee was in his front yard when Wilson arrived and as he began to stop his car, appellee ran into the house and turned out the lights. Wilson returned home and received no more calls.

■ In order for the trial court to grant a new trial on the ground of newly discovered evidence, that evidence must be so strong and persuasive that a different result would "necessarily follow." *Thomas v. Surf Pools, Inc.,* Ky.App., 602 S.W.2d 437 (1980). We do not think the evidence contained in the affidavit is of that character. The affidavit only shows that the appellee made two phone calls to Wilson about the upcoming trial. This evidence is questionably probative that the appellee made the calls but is not decisive of the appellee's guilt in the destruction of appellant's property. Also, there was no showing that this evidence could not have been obtained by reasonable diligence prior to trial. CR 59.01(g). Thus, the trial court did not abuse its discretion in denying the motion for a new trial.

■ The final two issues raised by the appellant deal with the extent of the damages. The appellant contends that the award of $25,500.00 in damages was excessive in light of appellant's injuries. We disagree. In considering the compensatory damages, we see that the appellee spent one evening in jail. Evidence was produced that appellee was stopped a couple of times by the police, possibly as harassment at the request of the appellant. The appellee testified that he had months of worry about his family, farming business and future liberty between the arrest and trial.

■ In a malicious prosecution suit in Kentucky, "a plaintiff in a malicious prosecution action may recover for humiliation, mortification and loss of reputation." *Raine, supra,* at 900. Thus, the appellee could recover if his allegations were true.

The appellant argues that the trial court should have allowed him to introduce evidence of the appellee's prior arrest in order to mitigate damages. Presumably, the appellant wanted to show that the appellee would be less humiliated by spending a night in jail if he had been arrested and spent time in jail previously. To support his contention, the appellant relies on *Allen v. Vogue Amusement Co.,* Ky., 377 S.W.2d 805 (1964), and *Butcher v. Adams,* 310 Ky. 205, 220 S.W.2d 398 (1949).

In *Butcher, supra,* the operator of a tavern was arrested after the polls closed for selling liquor earlier on primary elec-

tion day and taken to jail. The court ruled such an arrest was impermissible since state law allowed the sale of liquor after the polls closed. The operator claimed damages for humiliation and upset. However, the court approved the introduction of evidence that in the preceding year the operator had been arrested more than once on charges related to his business and had also spent ninety days in jail. The trial court had also admonished the jury that the evidence was only admissible for the issue of damages.

In *Allen, supra,* a boy was detained for causing a disturbance in a theater. The boy's parents sued for false imprisonment and claimed the boy had been "nervous, upset and rejective of adult authority." The court, relying on *Butcher, supra,* ruled that evidence the boy had been detained after the theater incident was admissible only on the damage question to show that the boy's condition may not solely be caused by the detention at the theater. Although no admonition was requested or given, the questions producing that evidence were carefully limited by the trial court.

Both of these cases were discussed in *Daugherty v. Kuhn's Big K Store,* Ky. App., 663 S.W.2d 748 (1983). In that case, Daugherty and his wife were detained by Kuhn's Big K Store and accused of stealing some plants. The couple sued for false imprisonment and sought damages for humiliation, embarrassment, damage to reputation, etc. Evidence was admitted to show Mr. Daugherty had previously pled guilty to a misdemeanor. On appeal, the evidence was ruled inadmissible.

The Court in *Daugherty, supra,* at 751, ruled that *Butcher, supra,* and *Allen, supra,* were:

... authority for allowing introduction of such evidence only for the purpose of proving that the mental anguish complained of was literally caused, in whole or in part, by some other event than that caused by the defendant. These cases are not authority for admitting such evidence for the purpose of proving that the plaintiff's character is so poor that he would not be embarrassed or humiliated by being falsely accused or detained.

In *Allen, supra,* the boy's detention that was admitted occurred *after* the theater detention which clearly shows the purpose for admission was the cause of any humiliation, not that he had become accustomed to detentions. In *Butcher, supra,* the prior acts of the plaintiff were close in time and very similar to wrongful detention complained of as pointed out in *Daugherty, supra.*

In the instant case, the prior incarceration was discussed in chambers after a motion in limine was made. Although the exact nature and date of the prior incarceration of the appellee were not established, the appellee's counsel did state that it occurred some time ago, resulted from an act unrelated to the act appellee was accused of, and did not result in a conviction. This was uncontroverted by the appellant.

 In *Daughtery, supra,* at 751, the Court held that "both the *Butcher* and *Allen* cases contain narrowly carved exceptions to the general rule prohibiting the introduction of evidence of specific acts of conduct." We do not think the prior incarceration in the instant case is of the character that would entitle its admission under these exceptions. Thus, the evidence was properly ruled inadmissible.

 The question remaining as to the compensatory damages is whether, in the absence of any mitigating evidence, the award is excessive. When the question of excessive damages is presented to an appellate court, the trial court's decision on this issue will not be disturbed unless it is "clearly erroneous." *Davis v. Graviss,* Ky., 672 S.W.2d 928 (1984). Evidence was presented to support the jury's award, thus the trial court's decision was not clearly erroneous. The award will not be set aside.

In regard to the punitive damages for $12,500.00, "to justify an award of punitive damages, the evidence must show malice, wilfulness, or wanton disregard of the rights of others." *Raine v. Drasin, supra,* at 902. The jury has wide discretion in awarding punitive damages, but there must be some relation to the injury and its cause to justify the size of an award. *Hensley v. Paul Miller Ford, Inc.,* Ky., 508 S.W.2d 759 (1974). In light of the facts of this case, we rule that there was a sufficient relationship and the jury did not abuse its discretion in awarding punitive damages of $12,500.00.

The award of the $500.00 in attorney's fees was proper.

This judgment is affirmed.

All concur.